**BRAUNHAGEY & BORDEN LLP**
Mitchell C. Stein, Esq. (NJ Bar No. 040751988)
    stein@braunhagey.com
Pratik K. Raj Ghosh, Esq. (admitted *pro hac vice*)
    ghosh@braunhagey.com
118 West 22nd Street, 12th Floor
New York, NY 10011
Tel: (646) 829-9403

David H. Kwasniewski, Esq. (admitted *pro hac vice*)
    kwasniewski@braunhagey.com
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: (415) 599-0210

*Attorneys for B&G Foods, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA DEAN, JOHN GALLOWAY, and BRIAN BLASSINGAME, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> B&G FOODS, INC., <br><br> Defendant. | Case No.: 2:22-CV-01338-SDW-JSA <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Motion Day: July 18, 2022 |

## MEMORANDUM IN SUPPORT OF DEFENDANT B&G FOODS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i.

TABLE OF AUTHORITIES ..........................................................................................ii.

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

    A.    The Parties ................................................................................................. 3

    B.    The FDA Already Regulates Heavy Metals in the U.S. Food Supply ................................................................................................... 4

    C.    Plaintiff Blassingame's Identical Lawsuit in California ......................... 5

    D.    B&G Foods's Products Comply with Federal and State Law .............. 6

    E.    Plaintiffs Amend the Complaint Without Addressing Defects............... 7

ARGUMENT ............................................................................................................. 7

I.     PLAINTIFFS LACKS ARTICLE III STANDING .......................................... 7

    A.    Plaintiffs Have Not Alleged a Cognizable Injury in Fact ...................... 9

    B.    Plaintiffs Cannot Assert Claims for Products They Did Not Purchase ................................................................................................ 12

    C.    Plaintiffs Lack Standing to Seek Injunctive Relief............................... 13

II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ......................................................................................... 14

    A.    Plaintiffs' Claims Are Preempted ....................................................... 15

    B.    Plaintiffs' Claims Fall Under the FDA's Primary Jurisdiction............. 19

    C.    Plaintiffs Fail to Plausibly Allege Deception....................................... 21

    D.    Plaintiffs' Breach of Implied Warranty Claim Fails............................ 25

III.   LEAVE TO AMEND SHOULD BE DENIED.................................................. 26

CONCLUSION......................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 21

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018) ................................................................ 23

*Herrington v. Johnson & Johnson Consumer Cos., Inc.,*
No. 09-CV-1597-CW, 2010 WL 3448531,at *8 (N.D. Cal. Sept. 1, 2010) ................................ 23

*Bannon v. Allstate Ins. Co.*,
  No. 3:14-CV-1229-FLW-LHG, 2015 WL 778828 (D.N.J. Feb. 24, 2015) ............................ 14

*Barbara's Sales, Inc. v. Intel Corp.*,
  227 Ill. 2d 45, 879 N.E.2d 910 (2007) ............................................................... 22

*Barreto v. Westbrae Nat.*,
  No. 19-CV-9677-PKC 2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) ......................................... 25

*Baykeeper v. NL Indus., Inc.*,
  660 F.3d 686 (3d Cir. 2011).............................................................................. 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, (2007) ....................................................................................... 15

*Bohac v. Gen. Mills, Inc.*,
  No. 12–CV–05280–WHO, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014)............................. 26

*Brahamsha v. Supercell OY*,
  No. 3:16-CV-8440-FLW-DEA, 2017 WL 3037382 (D.N.J. July 17, 2017) ......................... 14

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 347 (2001).......................................................................................... 17

*Cinaglia v. Levin*,
  258 F. Supp. 2d 390 (D.N.J. 2003) ..................................................................... 26

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983)............................................................................................ 13

*Constitution Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014)................................................................................. 8

*Coyle v. Hornell Brewing Co.*,
  No. 1:08–CV-02797-JBS-JS, 2010 WL 2539386 (D.N.J. June 15, 2010) ........................... 20

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*,
  54 F.3d 156 (3d Cir. 1995)................................................................................... 8

*Estrada v. Johnson & Johnson*,
  No. 16-cv-7492-FLW, 2017 WL 2999026 (D.N.J. July 14, 2017)................................ 9, 10

*Farina v. Nokia Inc.*,
  625 F.3d 97 (3d Cir. 2010)............................................................................ 17, 19

*Fellner v. Tri-Union Seafoods LLC*,
  539 F.3d 237 (3d Cir. 2008)................................................................................ 16

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982)........................................................................................... 16

*Finkelman v. Nat'l. Football League*,
    810 F.3d 187 (3d Cir. 2016)........................................................................................ 14

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)................................................................................................... 16

*Gibson v. Quaker Oats Co.*,
    No. 16-CV-4853, 2017 WL 3508724 (N.D. Ill. Aug. 14, 2017) ............................ 24

*Gould Elecs. Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000)........................................................................................ 8

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011).................................................................................... 13

*Halabi v. Fed. Nat'l Mortg. Ass'n*,
    No. 17-CV-01712-JMV, 2018 WL 706483 (D.N.J. Feb. 5, 2018)............................ 8

*Harrison Beverage Co. v. Dribeck Importers, Inc.*,
    133 F.R.D. 463 (D.N.J. 1990).................................................................................... 26

*Hemy v. Perdue Farms. Inc.*,
    No. 3:11–CV-00888-FLW, 2011 WL 6002463 (D.N.J. Nov. 30, 2011).................. 13

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009)............................................................................... 15, 16

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ...................................................................... 11

*In re Gen. Mills Glyphosate Litig.*,
    No. 16-CV-2869-MJD-BRT, 2017 WL 2983877 (D. Minn. July 12, 2017)............ 23

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018)............................................................................... passim

*In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*,
    No. 08-CV-939-DRD, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ................... 24, 25

*Johnson v. Shop-Vac Corp.*,
    No. 3:19-CV-14834-BRM-DEA, 2020 WL 3496957 (D.N.J. June 29, 2020)......... 25

*Kahl v. United States Fire Ins. Co.*,
    No. 21-CV-10359-SDW-JRA, 2022 WL 1134852 (D.N.J. Apr. 18, 2022) .............. 8

*Kimca v. Sprout Foods, Inc.*,
    No. 21-CV-12977-SRC, 2022 WL 1213488 (D.N.J. Apr. 25, 2022) ........... 11, 12, 14

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
    865 F. Supp. 2d 529 (D.N.J. 2011) .......................................................................... 13

*Lombreglia v. Sunbeam Prod., Inc.*,
    No. 20-CV-0332-FLW, 2021 WL 118932 (D.N.J. Jan. 13, 2021) ........................... 26

*Maryland v. Louisiana*,
    451 U.S. 725 (1981)................................................................................................... 15

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
    71 F.3d 1086 (3d Cir. 1995)...................................................................................... 20

*McNair v. Synapse Grp. Inc.*,
    672 F.3d 213 (3d Cir. 2012)................................................................................ 13, 14

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977)........................................................................................ 7

*Nat'l Prod., Inc. v. Gamber-Johnson LLC*,
    699 F. Supp. 2d 1232 (W.D. Wash. 2010)................................................................ 22

*Newborn Bros. Co. v. Albion Eng'g Co.*,
    481 F. Supp. 3d 312 (D.N.J. 2020) ........................................................................ 22

*Oxenberg v. Sec'y United States Dep't of Health & Hum. Servs.*,
    No. 21-1682, 2022 WL 336996 (3d Cir. Feb. 4, 2022) .......................................... 8

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2020)..................................................................... 23

*Parks v. Ainsworth Pet Nutrition, LLC*,
    No. 18-CV-6936-LLS, 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ....................... 23

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)................................................................................... 15

*Robinson v. Hornell Brewing Co.*,
    No. 1:11-CV-2183-JBS-JS), 2012 WL 1232188 (D.N.J. April 11, 2012) ............... 14

*Rosenbluth Internat., Inc. v. Superior Ct.*,
    101 Cal. App. 4th 1073 (2002) .............................................................................. 22

*Semeran v. Blackberry Corp.*,
    No. 2:15-CV-00750-SDW-LDW, 2016 WL 406339 (D.N.J. Feb. 2, 2016) ........... 12

*Simon v. United States*,
    341 F.3d 193 (3d Cir. 2003)..................................................................................... 8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................. 8, 9

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-CV-2746-JF, 2009 WL 1635931 ................................................................ 25

*Stone v. Prudential Fin., Inc.*,
    No. 2:21-CV-14610-SDW-ESK, 2021 WL 5413989 (D.N.J. Nov. 19, 2021) ....... 21

*Thomas v. Costco Wholesale Corp.*,
    No. 12-CV-02908–BLF, 2014 WL 5872808 (N.D. Cal. Nov. 12, 2014)................ 25

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
    980 F.3d 879 (3d Cir. 2020).................................................................................... 11

*Tran v. Sioux Honey Ass'n*,
    No. 8:17-CV-00110-JLS-SS, 2020 WL 3989444 (C.D. Cal. July 13, 2020) ......... 23

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)............................................................................................. 8

*U.S. v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956).................................................................................................. 20

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................................... 26

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007).................................................................................... 26

*Yu v. Dr Pepper Snapple Grp.*,
    No. 18-CV-06664-BLF, 2019 WL 2515919 (N.D. Cal. June 18, 2019) ................ 24

**Statutes**

21 U.S.C. § 346.......................................................................................................... 4
21 U.S.C. § 350l.......................................................................................................... 5
21 U.S.C. §§ 342, 346............................................................................................... 18
21 U.S.C. §§ 371, 393(b)(2)(A)................................................................................... 4

U.S. CONST. art. VI, cl. 2 ........................................................................................... 15

Regulations

21 C.F.R. §§ 7.1 ......................................................................................................... 4
21 C.F.R. §§ 10.30, 10.33, and 10.35 ...................................................................... 21
Food Labeling; Declaration of Ingredients,
    56 Fed. Reg. 28592-01 (Jun. 21, 1991) .............................................................. 18

Defendant B&G Foods, Inc. ("B&G Foods") respectfully submits this memorandum in support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("FAC").

## INTRODUCTION

B&G Foods is a 130-year-old American brand that makes a variety of shelf-stable and frozen foods, including many spices. Its products are delicious, nutritious, and safe to eat. They comply with all applicable federal and state food safety regulations including California's notorious Proposition 65, the country's most restrictive food regulation.

Plaintiffs are captive serial litigants who reside in other jurisdictions. Plaintiff Brian Blassingame filed an identical complaint in the Northern District of California where he lives, and then voluntarily dismissed it after learning which judge was assigned. They claim to have been injured by trace levels of naturally occurring heavy metal in B&G Foods' ground ginger and dried basil. All foods—e.g., an apple from Whole Foods—contain trace amounts of heavy metals because heavy metals are in our soil and water. But to consume a potentially harmful amount of ginger or basil would require eating multiple jars of it every day for many years. Despite cutting, pasting and refiling this case over and over, the First Amended Complaint ("FAC") does not even allege that Plaintiffs consumed *any* of the accused products.

The FAC fails to address the defects B&G Foods identified in its prior motion to dismiss. Plaintiffs' theory—that food companies must disclose immaterial amounts of heavy metals that naturally occur in every food grown in the ground—lacks merit, is preempted by the federal laws that govern heavy metal disclosures, is contrary to Third Circuit precedent, and would result in an incomprehensible and pointless patchwork of labeling rules that would baffle consumers.

As a threshold matter, Plaintiffs lack Article III standing. In *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018), the Court held that to make a non-speculative allegation of injury, a plaintiff must allege that the product

they purchased was worth less than they paid for. Plaintiffs cannot allege this because all ginger and basil contain trace amounts of heavy metals that come from the ambient presence of these substances in soil and water. (Declaration of David H. Kwasniewski, Esq. ("Kwasniewski Decl."), Ex. A (FDA's Apr. 20, 2018 Expert Q&A) ("A reality about our food supply is that metals . . . are present in certain foods. These elements occur naturally and as environmental pollutants in air, water and soil and they enter the food supply when plants take them up as they grow.").)[1]

Plaintiffs' claims are also preempted. The FDA already monitors and regulates heavy metals in food. Because naturally occurring heavy metals in foods cause no risk of harm, the FDA has specifically declined to impose the warning requirements that this case seeks to fabricate. Plaintiffs' claims therefore conflict with the FDA's regulatory framework for food labeling and are therefore preempted. Separately, Plaintiffs' claims should be dismissed under the doctrine of primary jurisdiction, as they involve highly technical, scientific questions that the FDA is in the process of addressing with the expert resources at its disposal. Plaintiffs' lawyers' non-existent disclosure rule seeks to replace the FDA's considered judgment with their own.

Finally, Plaintiffs' claims do not satisfy *Twombly/Iqbal*. The product labels are true and accurate. Plaintiffs do not allege that they received anything other than what they paid for—namely, ground ginger and dried basil. Plaintiffs do not allege the products contain materially more heavy metals than any competing product. They do not claim to have suffered any physical injury. Nor do they allege that they or their lawyers conducted any testing or analysis to support their allegations. These deficiencies, individually and collectively, are fatal to Plaintiffs' claims.

---

[1] B&G Foods has concurrently filed a Request for Judicial Notice ("RJN"), supported by the Declaration of David H. Kwasniewski, Esq., attaching true and correct copies of judicially noticeable documents published by the FDA. *See* Kwasniewski Decl., Exs. A-D.

For each of these reasons, the case should be dismissed with prejudice.

## BACKGROUND

### A.    The Parties

B&G Foods, Inc. ("B&G Foods") is a 130-year-old American food company that makes a variety of high quality, shelf-stable and frozen packaged foods.  B&G Foods owns the Tone's® brand, under which it sells a line of spices, seasonings, extracts, food colorings, and condiments, including Tone's® Ground Ginger.

Plaintiff Brian Blassingame is a resident of California who filed a virtually identical complaint in the Northern District of California on January 31, 2022. Blassingame alleges that he purchased Spice Islands® Sweet Basil. (FAC ¶ 11.) Blassingame alleges that the sweet basil did not disclose on its label that it contained "heavy metals," and if it had, he "would have been aware of that fact and would not have purchased the Product or would have paid less for it." (*Id.*) Blassingame alleges that at some point he learned the sweet basil contains heavy metals but does not allege to have consumed any of the product, and does not allege to have tested the product. (*Id.* ¶12.)

Plaintiff Patricia Dean is a resident of Illinois and alleges that she purchased Tone's® Ground Ginger. (FAC ¶ 5.) Dean alleges the ground ginger did not disclose on its label that it contained "heavy metals," and if it had, she "would have been aware of that fact and would not have purchased the Product or would have paid less for it." (*Id.* ¶ 6.) Dean alleges that at some point she learned the ground ginger contains heavy metals, but does not allege to have consumed any of the product, and does not allege to have tested the product. (*Id.* ¶7.)

Plaintiff John Galloway is a resident of Washington who was added as a party in the FAC and alleges that he purchased Spice Islands® Ground Ginger. (FAC ¶ 8.) Galloway alleges that the ground ginger did not disclose on its label that it contained "heavy metals," and if it had, he

"would have been aware of that fact and would not have purchased the Product or would have paid less for it." (*Id.* ¶ 9.) Galloway alleges that at some point he learned the ground ginger contains heavy metals, but does not allege to have consumed any of the product, and does not allege to have tested the product. (*Id.* ¶10.)

### B.      The FDA Already Regulates Heavy Metals in the U.S. Food Supply

The FDA is the federal agency tasked with regulating food safety for U.S. consumers. The FDA's enabling statute, the Food Drug & Cosmetic Act ("FDCA"), requires the FDA to (i) ensure that foods are safe, wholesome, sanitary, and properly labeled, (ii) promulgate regulations to enforce the provisions of the FDCA, and (iii) enforce its regulations through administrative proceedings. 21 U.S.C. §§ 371, 393(b)(2)(A), 21 C.F.R. §§ 7.1, *et seq*.

Heavy metals naturally occur in all organic foods due to heavy metals in the air and soil that bioaccumulate in plants. Pursuant to its obligation to protect consumers, the FDA regulates the maximum levels of naturally occurring heavy metals that a food may legally contain. The FDCA provides that the presence of unavoidable heavy metals is permissible "if the quantity of such substance in such food does not ordinarily render it injurious to health." *Id.*  Federal law requires that when such a substance cannot be avoided in food and may be present at levels that could be harmful, the FDA sets action levels that may not be exceeded. 21 U.S.C. § 346.  The action levels reflect considered scientific judgment and decision-making about when food may be rendered unsafe by the presence of deleterious substances.

The FDA has regulated heavy metals in the U.S. food supply and has taken action, and declined to take action, as it deems appropriate under the law. The FDA has noted the impracticality of setting regulatory limits for heavy metals in foods; since "fruits, vegetables, and grains can 'take up' toxic elements in the environment from the water, soil, and air, there are limits to how low the levels can be reduced." (Kwasniewski Decl., Ex. D (FDA's Apr. 8, 2021

4

Constituent Update) (further noting that heavy metal exposure depends both "on the levels of the elements found in the foods as well as the amount of the food consumed").) It has explained that if it determines that food is adulterated because it contains excessive heavy metals, the FDA has the authority to order a recall of that food. 21 U.S.C. § 350l. (Kwasniewski Decl., Ex. B (FDA Feb. 16, 2021 Constituent Update) (explaining that if the FDA finds that product violates law, including by not being safe for consumption, "the agency takes steps to stop the product from being imported, takes court action to stop its sale or recalls it if it is in the domestic market").)

### C.    Plaintiff Blassingame's Identical Lawsuit in California

Before filing the instant action, Plaintiff Blassingame filed (and shortly thereafter voluntarily dismissed) a virtually identical complaint in the Northern District of California on January 31, 2022. *See Blassingame v. B&G Foods, Inc.*, No. 5:22-cv-00640-BLF, Dkt. 1 (N.D. Cal. Jan. 31, 2022). Virtually all of the allegations in the original complaint here are copied verbatim from the *Blassingame* complaint. (Declaration of Pratik K. Raj Ghosh, Esq. ("Ghosh Decl."), Ex. A.) After a judge was assigned to that action, Blassingame dismissed his suit on March 22, 2022. *See Blassingame*, No. 5:22-cv-00640-BLF, Dkt. 12 (N.D. Cal. Mar. 22, 2022). On March 11, 2022, just eleven days before dismissing the *Blassingame* action, Plaintiffs' counsel recruited a new plaintiff and filed the instant action before this Court. (ECF No. 1.)

The lawsuit followed an article published in November 2021 by Consumer Reports that explained that herbs and spices contain trace levels of bioaccumulated heavy metals. (Compl. ¶¶ 14-17.) The article claims that the author "tested two or three samples from different lots of each product" and that the article represents "a spot check of the market and cannot be used to draw definitive conclusions about brands." Lisa L. Gill, *Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead*, Consumer Reports (Nov. 9, 2021) https://www.consumerreports.org/food-safety/your-herbs-and-spices-might-contain-arsenic-

cadmium-and-lead/. The article's authors describe their methodology as an "estimate of the average concentration of a product" and that a heavy metal presence was "assumed" if a metal "was detected in any of the two or three samples of a product." *Id.* The article concluded that 8 of the 9 ground ginger brands tested showed "some concern" of elevated levels of heavy metals. The article did not provide any detail as to which heavy metals were detected in the ground ginger samples, nor did the article provide any detail on the amount of heavy metals in the ground ginger samples. In the "Test Results" section, the article claimed that based on some unknown standard, the "some concern" rating referred "a health risk to children" if a child consumed 3/4 teaspoon or more of the product daily, *i.e.*, the amount of ground ginger necessary to make nearly two pumpkin pies.[2]

### D.   B&G Foods's Products Comply with Federal and State Law

Contrary to the allegations in the FAC, B&G Foods maintains rigorous quality standards for all of its products, which comply with all applicable federal and state laws. This includes California's notorious Proposition 65, which imposes the strictest food requirements in the country. *See* California Office of Environmental Health Hazard Assessment, *About Proposition 65,* https://oehha.ca.gov/proposition-65/about-proposition-65 (last visited Jun. 14, 2022). Indeed, shortly before Plaintiffs filed this lawsuit, B&G Foods obtained the dismissal of a Proposition 65 claim levied against its ground ginger products sold under the Durkee® brand after B&G Foods proved the product was completely safe. *See Consumer Advocacy Group, Inc. v. Tawa Supermarket, Inc. et al*, No. 20STCV17732 (Los Angeles Super. Ct. Dec. 7, 2021). In ruling on B&G Foods's motion for sanctions, the Court found that the plaintiff's claim lacked merit.

---

[2] Eagle Brand, *Perfect Pumpkin Pie*, Allrecipes, https://www.allrecipes.com/recipe/23439/perfect-pumpkin-pie/ (last visited Jun. 14, 2022) (the recipe for one pumpkin pie calling for a ½ teaspoon of ground ginger).

### E.      Plaintiffs Amend the Complaint Without Addressing Defects

Plaintiffs filed the original complaint on March 11, 2022 (ECF No. 1) which B&G Foods moved to dismiss on May 7, 2022 (ECF No. 10). Among other things, B&G Foods explained that Plaintiffs did not allege a cognizable injury-in-fact, that Plaintiffs' claims were preempted, and that Plaintiffs failed to plausibly allege deception. On May 12, 2022, Plaintiffs informed B&G Foods of their intention to amend the complaint and sought a 30-day extension in order to address the "substantive issues" raised in the motion to dismiss. (Ghosh Decl., Ex. B.) B&G Foods asked why these issues were not already addressed, given that B&G Foods informed Plaintiffs' counsel after the *Blassingame* action was filed that its claims were baseless. Plaintiffs' counsel did not provide an explanation. Instead, Plaintiffs filed the First Amended Complaint on May 31, 2022. (ECF No. 25.) The FAC added two additional Plaintiffs, as well as new causes of action under Washington and California state laws. Notably however, Plaintiffs *did not* add allegations either that any of the three Plaintiffs ever consumed *any* of the products at issue, or that Plaintiffs suffered any physical consequence as a result of consuming the B&G Foods' products at issue in this lawsuit. In short, the FAC failed to address any of the defects that B&G Foods identified in its original motion to dismiss.

### <u>ARGUMENT</u>

The FAC should be dismissed pursuant to Federal Rule 12(b)(1), for lack of Article III standing, and Federal Rule 12(b)(6) for failure to state a claim.

## I.      PLAINTIFFS LACKS ARTICLE III STANDING

Subject matter jurisdiction establishes a court's "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A plaintiff must allege a concrete injury for each claim and each form of relief that she seeks. The "'creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to

independently decide' whether the plaintiff has Article III standing." *Oxenberg v. Sec'y United States Dep't of Health & Hum. Servs.*, No. 21-1682, 2022 WL 336996, *3 (3d Cir. Feb. 4, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)).

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction by challenging jurisdiction facially or factually. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). "A facial attack 'contests the sufficiency of the complaint because of a defect on its face,' whereas a factual attack 'asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites.'" *Halabi v. Fed. Nat'l Mortg. Ass'n*, No. 17-CV-01712-JMV, 2018 WL 706483, *2 (D.N.J. Feb. 5, 2018) (internal citations omitted). In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). "When a defendant challenges the court's exercise of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kahl v. United States Fire Ins. Co.*, No. 21-CV-10359-SDW-JRA, 2022 WL 1134852, *1 (D.N.J. Apr. 18, 2022) (Wigenton, J.) (citing *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995)).

"To establish standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, ("*J&J*"), 903 F.3d 278, 284 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiffs cannot meet any of these requirements for any of their claims or forms of relief because (i) they cannot show any cognizable injury-in-fact, (ii) they

cannot asset claims for products she never purchased, and (iii) Plaintiffs assert they do not intend

to buy B&G Foods' products in the future, obviating the need for injunctive relief.

### A.     Plaintiffs Have Not Alleged a Cognizable Injury in Fact

Plaintiffs lack standing because they have not alleged that they suffered any injury as a

result of their past purchases of safe-to-eat ground ginger and dried basil. The FAC fails to

satisfy the injury requirement for the same reasons the Third Circuit explained in *J&J*. In that

case, the plaintiff alleged that she suffered economic injury by purchasing (and using) J&J's

baby talcum powder, which she alleged could lead to an increased risk of developing ovarian

cancer. *Id.* at 281-82. Like here, the *J&J* plaintiff did not allege any physical injury, did not

allege an increased risk of developing any injury in the future, and did not allege that the product

"failed to adequately perform" its intended functions (keeping skin soft and dry). *Id.* Instead, the

plaintiff alleged that "had she been properly informed that using Baby Powder could lead to an

increased risk of developing ovarian cancer, she would not have purchased the powder in the

first place." *Id.* at 282. The Third Circuit found those allegations insufficient: to establish an

economic injury, the plaintiff "must allege that she purchased Baby Powder that was worth less

than what she paid for." *Id.* at 287. In dismissing the claims, the district court in *J&J* noted that

"[p]laintiff must allege that [d]efendants had affirmative legal obligation to disclose the omitted

fact." *Estrada v. Johnson & Johnson*, No. 16-cv-7492-FLW, 2017 WL 2999026, at *16 (D.N.J.

July 14, 2017), *aff'd sub nom. In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales

Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018).

Here, Plaintiffs' claims suffer from the same fatal defects. Plaintiffs received exactly

what they paid for, namely, ground ginger and dried basil. Plaintiffs do not allege the products

caused any physical injury. They do not allege they consumed the superhuman quantities of

ground ginger and dried basil that would be necessary to cause any risk of harm at any point

during the years that the products were purchased. Plaintiffs do not even allege that they ever consumed *any* of the ground ginger or dried basil. Plaintiffs have not done any testing on the products or cited any studies showing that the exposure that supposedly occurred from whatever amount of product she may have consumed put them at risk of any adverse health effects. Nor do Plaintiffs allege B&G Foods's ground ginger contains materially more heavy metals than any other competitor's product, or any other food for that matter, or how that could be.

Indeed, Consumer Reports previously reported that there are much higher levels of heavy metals in fruit juice than spices. *See* Jesse Hirsch, *Arsenic and Lead Are in Your Fruit Juice: What You Need to Know*, Consumer Reports (Jan. 30, 2019) https://www.consumerreports.org/food-safety/arsenic-and-lead-are-in-your-fruit-juice-what-you-need-to-know/. Heavy metals have also been detected in products as common as milk, chocolate, green tea, rice, and spinach.[3] But most scientists agree that the trace amounts of heavy metals naturally present in foods pose no risk to human health.[4] Perhaps this is why Plaintiffs do not allege that B&G Foods had an "affirmative legal obligation" to disclose trace levels heavy metals in its products, because no such affirmative statutory or regulatory obligation exists. *Estrada v.*

---

[3] *See* Greg Cima, *Lead in Cows is a Risk for People*, American Veterinary Medical Ass'n (Sep. 25, 2019) https://www.avma.org/javma-news/2019-10-15/lead-cows-risk-people; European Commission Report, *Cadmium in Chocolate* (Mar. 2019), https://ec.europa.eu/food/system/files/2019-03/cs_contaminants_catalogue_cadmium_chocolate_en.pdf; Justyna Brzeicha-Cirocka et al, *Monitoring of Essential and Heavy Metals in Green Tea from different Geographical Origins*, Env. Monitoring and Assessment (Feb. 22, 2016) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4762913/; Erin Ross, *Experts Baggled by Cadmium Contamination in Spinach*, The Californian (Oct. 16, 2015) https://www.thecalifornian.com/story/money/2015/10/16/experts-baffled-cadmium-contamination-spinach/74087608/.

[4] *See* Kristin Kirkpatrick, *What is Heavy Metal Toxicity?* Today Magazine (Aug. 9, 2019) https://www.today.com/health/what-heavy-metal-detox-nutritionist-discusses-symptoms-toxicity-t159343 ("Should the average person worry about heavy metal toxicity? In short, no. Studies show that high levels of exposure in the average persona are rare. Most serious exposures to heavy metals occur in the workplace, not from the foods we eat.").

*Johnson & Johnson*, No. 16-CV-7492-FLW, 2017 WL 2999026, at *16 (D.N.J. July 14, 2017).

Plaintiffs cannot plausibly allege they suffered any actual injury because they cannot claim B&G

Foods's products contain materially more heavy metals than any other food, much less that they

pose any risk of harm.

In short, Plaintiffs' claims are all based entirely on the speculative allegation that the

ground ginger could have caused some unknown injury because it supposedly contains "elevated

levels of toxic heavy metals" and/or is "worthless." (Compl. ¶ 39.) Whatever that means, such

allegations cannot give rise to Article III standing. *See J&J*, 903 F.3d at 278; *Thorne v. Pep Boys*

*Manny Moe & Jack Inc.*, 980 F.3d 879, 889 (3d Cir. 2020) (plaintiff's theory of injury supported

"with only speculative allegations that the tires she received from Pep Boys were worth less than

what she paid for them" was held to be insufficient for standing purposes); *Kimca v. Sprout*

*Foods, Inc.*, No. 21-CV-12977-SRC, 2022 WL 1213488, at *9 (D.N.J. Apr. 25, 2022) (rejecting

the argument that baby food alleged to contain heavy metals were "worthless" because plaintiffs

did "not otherwise allege that the Baby Food Products did not perform their intended purpose or

that the products were worthless for any other reason"); *In re Fruit Juice Prods. Mktg. & Sales*

*Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (rejecting the argument that fruit juice

products were "valueless" because "the fact is that [the plaintiffs] paid for fruit juice, and they

received fruit juice, which they consumed without suffering harm").

*Kimca v. Sprout Foods, Inc.* involves identical allegations to those in this case – that

Sprout's baby food products contained allegedly elevated levels of heavy metals that were not

disclosed in its packaging. No. 21-CV-12977-SRC, 2022 WL 1213488 (D.N.J. Apr. 25, 2022).

Judge Chester granted Sprout's motion to dismiss due to plaintiffs' lack of Article III standing.

First, the Court found that plaintiffs' theory of injury, that plaintiffs "are not at an increased risk

of adverse health consequences as a result of their consumption" of the products at issue, was too speculative to provide the basis for Article III standing. *Id.* at 11-16. The court reasoned that because the FDA has not yet established what levels of heavy metals are "unsafe", plaintiffs could not allege that the products actually contained unsafe levels. *Id.* Second, the court determined that plaintiffs had not demonstrated economic injury, under either a price premium or benefit of the bargain theory. For the former, "[p]laintiffs do not identify any other comparable, cheaper, or safer products to show that they, in fact, paid a premium for the Baby Food Products." *Id.* at 16-18. For the latter, the court determined that the case was "analogous to the facts of" *J&J*, 903 F.3d 278 (3d Cir. 2018). Finally, the court also determined that plaintiffs had no standing to pursue injunctive relief, since they are aware of the alleged issues and could no longer be deceived. *Id.* at 19-20. The FAC suffers from all of the same defects that resulted in dismissal in *Kimca*, the same result should follow here.

## B.    Plaintiffs Cannot Assert Claims for Products They Did Not Purchase

The FAC alleges that Plaintiffs seek to recover damages related to "herbs and spices sold under the brand names 'Spice Islands' and 'Tone's', including Spice Islands' Sweet Basil, Spice Islands' Ground Ginger, and Tone's Ground Thyme." (Compl. ¶ 1.) However, the only B&G Foods products that Plaintiffs allege to have purchased is Tone's® Ground Ginger, Spice Islands® Ground Ginger, and Spice Islands® Sweet Basil. (Compl. ¶¶ 5, 8, 11.) Courts in this district have repeatedly dismissed claims in putative class actions where the plaintiff only alleged injury as to one product in a series or line of products by the same defendant. *See, e.g., Semeran v. Blackberry Corp.*, No. 2:15-CV-00750-SDW-LDW, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (where plaintiff had purchased only one model of a Blackberry smartphone, but sought to represent a class of consumers who had purchased other models, plaintiff did not have "standing to pursue a claim that products he neither purchased nor used did not work as

advertised"); *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (plaintiff could only bring claim as to baby bath products actually purchased); *Green v. Green Mountain Coffee Roasters, Inc.,* 279 F.R.D. 275, 280 (D.N.J. 2011) (plaintiff seeking to represent all individuals who purchased coffee brewing systems could only pursue claim as to product actually purchased); *Hemy v. Perdue Farms. Inc.,* No. 3:11–CV-00888-FLW, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011) (limiting claims regarding inhumanely raised and slaughtered chicken to brand of chicken products actually purchased by plaintiff). The same result should follow here. The FAC contains no allegations that Plaintiffs ever brought any brand of thyme. Plaintiffs lack standing to pursue any claims against products they never bought.

### C.    Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs also lack Article III standing to pursue injunctive relief because she cannot claim that she would suffer any imminent and irreparable injury in the future. *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012). To obtain injunctive relief, Plaintiffs must demonstrate "a sufficient likelihood that [they] will *again* be wronged in a *similar* way," but they fail to make those allegations. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added).

Plaintiffs do not allege that they intend to buy ground ginger or dried basil in the future. To the contrary, now that Plaintiffs are fully aware that ground ginger and dried basil contain trace levels of naturally occurring heavy metals, and if the allegations in the FAC are to be credited, Plaintiffs will *not* buy the products anymore. (FAC ¶¶ 5, 8, 11 ["Had Defendant disclosed on the label that the Product contained unsafe levels of toxic heavy metals, [Plaintiffs] would have been aware of that fact and would not have purchased the Product."])

Even if Plaintiffs were to contend that they might purchase the products again in the future if they could be certain that they do not contain heavy metals, that choice at this point

would be "a matter of pure speculation." *McNair*, 672 F.3d at 225. The Third Circuit has roundly

rejected such a "stop me before I buy again" theory of standing to pursue injunctive relief. *J&J*,

903 F.3d at 293 (refusing to limit *McNair* "to instances when plaintiffs do not allege an intention

to make purchases in the future"). Additionally, like the plaintiff in *Kimca*, plaintiffs through

their pleadings have admitted they are now aware of the risks they allege are associated with

defendants' products, and therefore, as a matter of common sense, "will not be deceived by

[defendant's] marketing in the future." *Kimca*, 2022 WL 1213488, at *10 (D.N.J. Apr. 25, 2022).

Accordingly, Plaintiffs' claims for injunctive relief can rely, at most, on "wholly

conjectural future injury" which is insufficient to establish the constitutional requisite of showing

a likelihood of future harm. *Id.*; *see Finkelman v. Nat'l. Football League*, 810 F.3d 187, 193 (3d

Cir. 2016) (dismissing New Jersey Consumer Fraud Act claim for lack of standing and holding

that Article III standing is a "bedrock obligation to examine [the court's] own subject matter

jurisdiction"); *Brahamsha v. Supercell OY*, No. 3:16-CV-8440-FLW-DEA, 2017 WL 3037382,

at *4 (D.N.J. July 17, 2017) (dismissing consumer protection claim for lack of standing because

"[i]n the context of a statutory violation, allegations of a bare procedural violation under the

statute, divorced from any concrete [or substantive] harm' cannot satisfy the injury-in-fact

requirement") (citation omitted); *Robinson v. Hornell Brewing Co.*, No. 1:11-CV-2183-JBS-JS),

2012 WL 1232188, at **4, 7 (D.N.J. April 11, 2012) (finding lack of standing, as "controlled by

*McNair*," where consumer plaintiff now aware of the allegedly "misleading nature of the label").

## II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

In order to survive a motion to dismiss under Rule 12(b)(6), "[a] complaint must do more

than allege the plaintiff's entitlement to relief." *Bannon v. Allstate Ins. Co.*, No. 3:14-CV-1229-

FLW-LHG, 2015 WL 778828, at *2 (D.N.J. Feb. 24, 2015). This standard requires that a

plaintiff allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). A complaint based entirely on speculation—like the one Plaintiff has filed here—falls short of this standard. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level").

Here, Plaintiffs cannot plausibly state a claim for relief for several reasons. ***First***, Plaintiffs' claims are preempted by the FDA, which monitors and regulates heavy metals in foods. ***Second***, regardless of whether Plaintiffs' claims are preempted, they should be dismissed under the doctrine of primary jurisdiction, as the claims involve highly technical, scientific questions that the FDA is in the process of addressing with the expert resources at its disposal. ***Third***, Plaintiffs fail to meet minimal plausibility standards under *Twombly* and *Iqbal* for the simple reason that they received exactly what they paid for—safe-to-eat ground ginger and dried basil.

## A.   Plaintiffs' Claims Are Preempted

Plaintiffs' claims—and the underlying relief sought (mandatory food labeling or injunctions prohibiting the sale of ground ginger and other products)—directly conflict with the FDA's role under federal law to establish a uniform, national policy for food safety, including regulation of heavy metals in the food supply. Under the Supremacy Clause, conflicts that arise between state and federal law must, of course, be resolved in favor of federal law. *See* U.S. CONST. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land"); *Maryland v. Louisiana*, 451 U.S. 725, 746-47 (1981). Conflict preemption applies where "it is impossible for a private party to comply with both state and federal requirements" *or* "when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d Cir. 2009)

(internal citations and quotation marks omitted).  Conflict preemption does not arise solely from federal statutes and regulations, but can "in appropriate circumstances" apply when there is "federal agency action taken pursuant to statutorily granted authority short of formal, notice and comment rulemaking" *Holk*, 575 F.3d at 340 (quoting *Fellner v. Tri-Union Seafoods LLC*, 539 F.3d 237, 244 (3d Cir. 2008)).

Significantly, where a federal regulatory agency like the FDA has regulated in an area of its expertise pursuant to a legal mandate, state law may not be used to bar conduct that the agency has chosen to not prohibit. Otherwise, the threat of civil liability would erect an obstacle to the accomplishment of the comprehensive and carefully calibrated federal regulatory program. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000) (federal law that required a percentage of new cars to employ passive-restraint systems impliedly preempted state tort claims that would have had effect of requiring auto manufacturers to install air bags in all new cars); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 156 (1982) (conflict preemption where state law limited availability of an option that federal agency thought appropriate to ensure its overall regulatory objectives). Attempts to commandeer the FDA's role to regulate food safety and food labeling under the guise of state consumer protection law, as Plaintiffs attempt here, are preempted because they conflict with federal law and supremacy.

In determining what types of agency actions count for purposes of establishing federal law entitled to preemptive effect, the Third Circuit looks to whether the agency acted with "fairness and deliberation." *Holk*, 575 F.3d at 340.  For example, an informal policy statement issued "without the benefit of public input" or without responding to comments might lack the fairness and deliberation required. *Id*. at 341. On the other hand, state-law claims will be barred under conflict preemption when the relevant agency uses "its reasoned judgment to weigh the

relevant considerations and determine how best to prioritize between [competing] objectives." *Farina v. Nokia Inc*., 625 F.3d 97, 123 (3d Cir. 2010).  In such situations, states are not permitted to "[a]lter[ ] the balance struck by the FDA to protect safety to a greater degree" because such actions would "dramatically increase the burdens on industry." *Id*. (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 347, 350–51 (2001)).

*Farina* is instructive. There, the plaintiff filed a lawsuit against Nokia asserting claims for personal injury due to radiation from phones, asserting that the sale of cell phones that emitted such radiation violated *state* law, even though the phones were in compliance with the FCC regulations.  *Id*. at 105, 107-8. The Court found that "although [plaintiff] disavows any challenge to the FCC's RF standards . . . , to succeed, *he necessarily must establish that cell phones abiding by the FCC's SAR guidelines are unsafe to operate without a headset*. In other words, [plaintiff] must show that these standards are inadequate—that they are insufficiently protective of public health and safety." *Id*. at 122 (emphasis added). Such a theory of state-law liability is subject to conflict preemption, the Court explained, because "[a]s an agency engaged in rulemaking, the FCC is well positioned to solicit expert opinions and marshal the scientific data to ensure its standards both protect the public and provide for an efficient wireless network. Allowing juries to perform their own risk-utility analysis and second-guess the FCC's conclusion would disrupt the expert balancing underlying the federal scheme." *Id*. at 126.

Conflict preemption applies here for the same reasons. The FDA pervasively regulates food safety under a grant from Congress. The FDA—singularly positioned to solicit expert opinions, marshal the scientific data and harmonize stakeholder interests—has looked at and continues to study the issues of heavy metals in foods and to regulate their presence in the food supply. Contrary to Plaintiffs' demand in this lawsuit, the FDA—as part of its historical study of

17

heavy metals—has *not* banned their presence in food, much less any of the products challenged in the lawsuit, is unsafe, adulterated, or cannot be sold. Nor, as part of its renewed look at these same issues, has the FDA provided any indication that action levels for heavy metals, if adopted at all, will be set at 0, and it has not required any labeling with respect to presence of heavy metals. Instead, the FDA has decided to take a holistic approach that balances several competing objectives, including the need for babies and young children to eat a balanced and nutritious diet, and will set action levels as necessary to maintain the safety of the food supply. This is in accord with the FDA's historical approach, such as when the FDA set action levels for inorganic arsenic in rice cereals for infants, or allowable levels of inorganic substances, including arsenic, cadmium, lead, and mercury, in bottled water.

The same is true with Plaintiffs' request for label warnings or disclosures regarding the presence of heavy metals. The FDA is well aware of ubiquitous heavy metals, and has studied their impact on food safety. The presence of heavy metals (and other unavoidable substances in food) was specifically contemplated by the FDCA, which empowers the FDA to set action levels and to regulate adulterants to ensure food safety. 21 U.S.C. §§ 342, 346. Both Congress through the FDCA, and the FDA "in their deliberate judgment" and per their "deliberate choice" have not required warning labels or disclosures about the presence of ubiquitous heavy metals on any food, including herbs and spices. In fact, in other contexts where it was suggested that the FDA require warnings to declare the presence of certain ingredients and substances, the FDA has stated that it is "unwilling to require a warning statement in the absence of clear evidence of a hazard. If the agency were to require warnings for ingredients that only cause mild idiosyncratic responses, it is concerned that it would overexpose consumers to warnings. As a result, consumers may ignore, and become inattentive to, all such statements." Food Labeling;

Declaration of Ingredients, 56 Fed. Reg. 28592-01, 28615 (Jun. 21, 1991). That concern is applicable here because every food product would need to carry a disclaimer about the potential presence of heavy metals, which would provide no benefit to consumers.

Permitting Plaintiffs' lawyers to act as the FDA, under the guise of state law, to set their own labelling requirements and ban trace amounts (or the risk) of contaminants altogether or to find, retroactively, that herbs and spices should not have been sold or should have a warning label, would "disrupt the expert balancing underlying the federal scheme." *Farina*, 625 F. 3d at 126. A determination of what requirements, if any, should be mandated, and the action levels, if any, that should be set, is squarely for the FDA to make. Otherwise, a patchwork of potentially contradicting court orders in different cases across the country would make it impossible for companies to comply. Accordingly, conflict preemption requires dismissal of the Compliant.

### B.  Plaintiffs' Claims Fall Under the FDA's Primary Jurisdiction

This lawsuit should not proceed until the FDA concludes its inquiry under the separate, but related, doctrine of primary jurisdiction. The FDA is currently investigating whether to implement regulations (potentially including, but not limited, to establishing action levels for enforcement) regarding the presence of heavy metals and other contaminants in the U.S. food supply. (Kwasniewski Decl., Ex. C (FDA's Mar. 5, 2021 Constituent Update) (describing reducing heavy metal exposure as the among its "highest priorities" and that it is "actively working to make progress on identifying and implementing impactful solutions" to reduce heavy metal exposure in foods).) Such regulation is undoubtedly within the ambit of the FDA's jurisdiction and expertise. (*Id.* (describing the process of reducing heavy metals in foods as a "complicated and multifaceted" process that can carry "unintended consequences").) Having opened an active and rigorous investigation into the matter, the agency should be afforded the opportunity before private lawsuits that seek individualized judicial determinations of

appropriate levels of heavy metals proceeds. Plaintiffs' claims implicate numerous food regulatory issues that under the law require a uniform national approach to food safety based on science and only after input from all stakeholders. These issues should not be decided in the first instance by multiple courts with different defendants making different products, in a false advertising consumer class action.

The doctrine of primary jurisdiction applies when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995). The doctrine affords the court discretion to stay a case or dismiss it without prejudice. *Coyle v. Hornell Brewing Co.*, No. 1:08–CV-02797-JBS-JS, 2010 WL 2539386, at *3 (D.N.J. June 15, 2010) (staying case).

In determining whether to apply the primary jurisdiction doctrine, courts consider factors such as whether the issue "is within the conventional experiences of judges or whether it involves technical or policy consideration within the agency's particular field of expertise" as well as whether the question "is particularly within the agency's discretion." *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (quotation marks and citation omitted). These factors are satisfied in the instant case.

Evaluating acceptable levels of heavy metals in food "is a technical matter involving complex chemical considerations" that "lies within the FDA's particular filed of expertise regarding food chemistry and the labeling of food and beverage products." *Coyle*, 2010 WL 2539386, at *4 (applying doctrine because whether high fructose corn syrup renders a product not "100% natural" is a question within FDA expertise). The FDA is uniquely capable of taking into consideration food safety, the adequacy of the food supply, and the fact that alleged

contaminants are omnipresent in the environment, and reducing all of that to feasible and

achievable regulations and/or formal guidance. Specifically, the FDA's Toxic Elements Working

Group "aims to reduce exposure to toxic elements in food" and "is made up of senior leaders and

risk managers in the Center for Food Safety and Applied Nutrition with experience in

microbiology, toxicology, chemistry, medicine, epidemiology, policy and law." U.S. Food and

Drug Administration, *Metals and Your Food* (April 8, 2021)

https://www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food. The proper

avenue for the regulatory changes that Plaintiffs seek is not a lawsuit, but rather a petition to the

FDA pursuant to 21 C.F.R. §§ 10.30, 10.33, and 10.35. The FDA itself states that those seeking

to "change or cancel a regulation, or to take other action" can submit a petition to the agency and

provides details instructions for doing so. U.S. Food and Drug Administration, *Comment on*

*Proposed Regulations and Submit Petitions* (Aug. 16, 2019) https://www.fda.gov/regulatory-

information/dockets-management/comment-proposed-regulations-and-submit-petitions.

Dismissal under the primary jurisdiction doctrine is appropriate both because the regulation of

food products is within the FDA's discretion as well as because the issue of acceptable heavy

metal levels in food products is a highly technical question involving considerations within the

FDA's particular field of expertise.

### C.      Plaintiffs Fail to Plausibly Allege Deception

"Determining whether the allegations in a complaint are 'plausible' is 'a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense.'"

*Stone v. Prudential Fin., Inc.*, No. 2:21-CV-14610-SDW-ESK, 2021 WL 5413989, at *2 (D.N.J.

Nov. 19, 2021) (Wigenton, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). All of

Plaintiffs' false advertising and fraud-based claims (both common law and statutory) require that

Plaintiffs allege to have actually been deceived, or at the very least that members of the public

would be likely to be deceived by the representations or omissions at issue. *See Rosenbluth Internat., Inc. v. Superior Ct.*, 101 Cal. App. 4th 1073, 1077 (2002), *as modified* (Sept. 11, 2002) (holding that under California law, a plaintiff bringing a false advertising claim must allege "that members of the general public are *likely* to be deceived"); *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 353 (D.N.J. 2020) (holding that under New Jersey law, a plaintiff bringing a false advertising claim must show that the misleading statement "actually deceives a portion of the buying public"); *Nat'l Prod., Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1240 (W.D. Wash. 2010) (holding that under Washington law, a plaintiff bringing a false advertising claim must show that "the advertisement actually deceived or has a tendency to deceive a substantial segment of the audience"); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 51, 879 N.E.2d 910, 914 (2007) (noting that under Illinois law, a plaintiff bringing a false advertising claim allege that plaintiff was "actually deceived" by defendant and that plaintiff was "aware of [the] specific representations" underlying the claims). Here, it is implausible that Plaintiffs would base their decisions to purchase ground ginger and dried basil on whether the product contained trace levels of naturally occurring heavy metals.

Heavy metals like lead, arsenic, and cadmium are "naturally occurring" in water, air, and soil and "they are absorbed into plants, which are then eaten by people or by animals that enter the food supply." Kwasniewski Decl., Ex. A. The levels of these elements in foods depend on many factors, including the levels in the air, water, and soil used to grow the crops, and the type of crop and how much uptake there is from the environment. *Id*. "Because these elements occur in the environment, currently they cannot be completely avoided."  *Id.*, Ex. B.

The foundation of Plaintiffs' claims is the allegation that B&G Foods deceptively concealed that its ground ginger included heavy metals. (Compl. ¶¶ 26-35.) Plaintiffs allege that

22

they would not have purchased the ground ginger or dried basil (or, assumedly, any herbs and spices) if they had known that heavy metals were present or potentially present. This theory of deception is implausible for two independent reasons.

*First*, courts routinely find that because trace contaminants are ubiquitous in the food supply, their mere presence (or possibility of their presence) does not state a claim because it is "not likely to affect consumers' decisions in purchasing the product and is thus not material." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2020); *see also Parks v. Ainsworth Pet Nutrition, LLC*, No. 18-CV-6936-LLS, 2020 WL 832863, at *1 (S.D.N.Y. Feb. 20, 2020) ("The level of glyphosate in the tested Products is negligible and significantly lower than the FDA's limit, which supports a finding that the Products' glyphosate residue is not likely to affect consumer choice"); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. 09-CV-1597-CW, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010) (dismissing omission claims regarding trace amounts of formaldehyde and dioxane for failure to allege facts showing that omissions were material to reasonable consumers); *In re Gen. Mills Glyphosate Litig.*, No. 16-CV-2869-MJD-BRT, 2017 WL 2983877, at *5 (D. Minn. July 12, 2017) (not plausible that a reasonable consumer would be deceived by trace glyphosate in food product); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA.") (alteration in original) (citation omitted) (affirming district court's grant of a motion to dismiss); *Tran v. Sioux Honey Ass'n*, No. 8:17-CV-00110-JLS-SS, 2020 WL 3989444, at *4-5 (C.D. Cal. July 13, 2020) (no evidence

reasonable consumers are deceived by the presence of trace amounts of glyphosate); *Gibson v. Quaker Oats Co.*, No. 16-CV-4853, 2017 WL 3508724, at *4 (N.D. Ill. Aug. 14, 2017) (dismissing claims based on the alleged presence of glyphosate as preempted); *Yu v. Dr Pepper Snapple Grp.*, No. 18-CV-06664-BLF, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (reasonable consumer would not understand "Natural" to mean the utter absence of residual pesticides, which are well below allowable tolerances).

**Second**, Plaintiffs' alleged ignorance of the presence of ubiquitous heavy metals in food is implausible as a matter of law, since it is directly contradicted by the allegations in the FAC. The FAC readily acknowledges the existence of widespread, general public knowledge, information, and research regarding heavy metals in food products. In false advertising cases, Plaintiffs are held to the common knowledge, experience, and sense that the reasonable consumer brings to the shopping process. *See In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, No. 08-CV-939-DRD, 2009 WL 2940081, at *12 (D.N.J. Sept. 11, 2009) (granting motion to dismiss because "the notion that [defendant] could 'conceal' something that was so well covered in the media defies logic" because "[i]n order to intend that others rely on the concealment of a fact, the fact must, of course, actually be *concealed*"). Accordingly, it is not plausible that Plaintiffs were ignorant of the possibility that trace amounts of heavy metals or other alleged contaminants are in the ground ginger absent a specific label disclosure.

The FDA has confirmed it "routinely monitors levels of toxic elements in food" to inform and enforce FDA rules and guidance. Kwasniewski Decl., Ex. D. If this monitoring finds that a food poses a health risk the FDA takes "steps to remove those foods from the market." *Id.* This record, combined with the above holdings, compels two dispositive conclusions: (i) consumers know and understand that trace amounts of heavy metals and other alleged contaminants in food

24

products are ubiquitous, *and* (ii) absent allegations that the levels contained in the challenged products exceed FDA levels or render the products adulterated, the mere presence of heavy metals is not material to reasonable consumers. Accordingly, Plaintiffs' consumer deception claims should be dismissed on this independent basis.

**D.      Plaintiffs' Breach of Implied Warranty Claim Fails**

A breach of the implied warranty of merchantability requires that the challenged product is defective or not fit for the ordinary purpose for which the product is used. *See, e.g.*, *Johnson v. Shop-Vac Corp.*, No. 3:19-CV-14834-BRM-DEA, 2020 WL 3496957, at *7 (D.N.J. June 29, 2020), *reconsideration denied*, 2021 WL 791830 (D.N.J. Feb. 26, 2021)*; Barreto v. Westbrae Nat.*, No. 19-CV-9677-PKC 2021 WL 76331, at *7 (S.D.N.Y. Jan. 7, 2021); The implied warranty does not impose a general requirement that goods precisely fulfill the expectation of the buyer. *Stearns v. Select Comfort Retail Corp.*, No. 08-CV-2746-JF, 2009 WL 1635931, at*8 (N.D. Cal. June 5, 2009). "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *In re Toshiba Am. HD DVD Marketing and Sales Practices Litigation,* No. 2:08-CV-00939-DRD-MAS, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009). A food product is fit for its ordinary purpose if it is fit for consumption. *See Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908–BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) (implied warranty claim for food requires that product was unsafe to consume); *Barreto*, 2021 WL 76331, at *7.

Plaintiffs have not alleged any facts showing that B&G Foods' ground ginger and dried basil are unsafe for consumption. Were the FAC's conclusory statements to the contrary true, everyone on the planet would be dead or injured. Indeed, despite claiming to have purchased the product for years, Plaintiffs cannot allege that they suffered any adverse health effects from consuming the accused spices. Nor could they. The Consumer Reports article cited by Plaintiffs

makes clear that they would need to consume an extraordinary amount of spices on a daily basis before even approaching the level described as "some concern." Because Plaintiffs cannot plausibly allege that the products are unfit for consumption, their warranty claims fail as a matter of law. *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013); *Bohac v. Gen. Mills, Inc.*, No. 12–CV–05280–WHO, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014).

## III.   LEAVE TO AMEND SHOULD BE DENIED

Leave to amend is denied when "amendment would be futile." *Winer Family Trust v. Queen*, 503 F.3d 319, 330-331 (3d Cir. 2007). An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Lombreglia v. Sunbeam Prod., Inc.*, No. 20-CV-0332-FLW, 2021 WL 118932, at *5 (D.N.J. Jan. 13, 2021) (citing *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990)).

Here, Plaintiffs have pled their causes of action three times.  None of the pleadings offered by Plaintiff, however, has cured the various defects identified in this motion, despite Plaintiffs being on notice of these defects since B&G Foods filed its motion to dismiss months ago.  Plaintiffs have not cured these defects because they cannot be cured: there are no conditions under which Plaintiffs can maintain standing, or that their claims survive, due to pre-emption, the primary jurisdiction doctrine, and overall failure to plead a claim that is plausible. Considering that "it is impossible for [Plaintiff] to prove any set of facts that would entitle [her] to relief," Plaintiffs' claims are futile, and the FAC should be dismissed with prejudice. *Cinaglia v. Levin*, 258 F. Supp. 2d 390, 396 (D.N.J. 2003).

## <u>CONCLUSION</u>

For the foregoing reasons, the B&G Foods respectfully requests that the Court dismiss all of Plaintiffs' claims with prejudice.

Dated:  June 14, 2022                        Respectfully Submitted,

                                    By:     *s/ Mitchell Stein*
                                            Mitchell C. Stein, Esq.
                                            (NJ Bar No. 040751988)
                                            **BRAUNHAGEY & BORDEN LLP**
                                            118 West 22nd Street, 12th Floor
                                            New York, NY 10011
                                            Tel: (646) 829-9403
                                            stein@braunhagey.com

                                            *Attorney for Defendant*
                                            *B&G Foods, Inc.*